IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Luz Morales, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Jo Anne B. Barnhart, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 6:05-1574-MBS-WMC <br><br> **REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security Administration that the plaintiff was not entitled to disability insurance benefits ("DIB") or supplemental security income benefits ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

On January 17, 2003, the plaintiff filed applications for DIB and SSI alleging disability beginning December 18, 2002. The applications were denied initially and on reconsideration. On September 24, 2003, the plaintiff requested a hearing, which was held on November 18, 2004. Following the hearing, at which the plaintiff, her attorney and a

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

vocational expert appeared, the administrative law judge considered the case *de novo*, and on February 17, 2005, determined that the plaintiff was not entitled to benefits. This determination became the final decision of the Commissioner when it was adopted by the Appeals Council on March 31, 2005.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

> (1)     The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> (2)     The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (3)     The claimant's cervical degenerative joint disease, bilateral carpal tunnel syndrome, and cirrhosis of the liver are considered "severe" impairments in combination based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).
>
> (4)     These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (5)     I find the claimant's allegations regarding her limitations are not fully credible for the reasons set forth in the body of the decision.
>
> (6)     The claimant has the residual functional capacity for light exertional work with limitations. She is able to frequently lift ten pounds with a heaviest weight lifted of twenty pounds. She requires a sit/stand option. She is not to crawl, crouch, climb, squat, or kneel. She is not to use the lower extremities for pushing or pulling. She is not to use the upper extremities for work above shoulder level. The work is to be unskilled.
>
> (7)     The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).
>
> (8)     The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

(9) The claimant has a high school equivalent education (20 CFR §§ 404.1564 and 416.964).

(10) Transferable skills are not an issue in this case.

(11) The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

(12) Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, and based on the testimony of the vocational expert, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as parking lot attendant, a storage facility clerk, and a carton packer.

(13) The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged

in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v.*

*Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### **EVIDENCE PRESENTED**

The plaintiff applied for DIB and SSI in October 2002, alleging disability since December 2002 due to thyroid and liver disorders, hypertension, and "light stroke" (Tr. 76-79, 96, 363-65).  She was 40 years of age as of the date of the Commissioner's final decision (Tr. 77).  She has the equivalent of a twelfth-grade education and past work experience as a hospital admissions clerk, a resort desk supervisor, a roadside service dispatcher, a technical support call center worker, a department store salesperson, a housekeeper, and a clerical worker (Tr. 97, 102, 110).

The plaintiff has a history of undergoing a bone marrow transplant in approximately 1990 due to leukemia, and sustaining a right leg fracture (Tr. 172, 176).

Evidence relevant to the plaintiff's claim revealed that records of the Medical University of South Carolina between October 10, 2002, and July 17, 2003, revealed treatment for insulin-dependent diabetes mellitus (IDDM); assessment of hepatic cirrhosis and the status of previous leukemia requiring bone marrow transplant in the past; and

diagnoses of hypothyroidism and a history of status post previous bone marrow transplant in the past. Examinations revealed normal neck examination; normal thyroid examination; normal extremity examination; normal abdominal examination, including the absence of jaundice, a soft, nontender, nondistended abdomen, and the absence of ascites (effusion and accumulation of fluid in the abdominal cavity); the absence of encephalopathy; and the absence of extremity edema. Blood glucose levels ranged between 156 mg/dL and 326 mg/dL. A liver biopsy revealed hepatic cirrhosis and chronic hepatitis. The plaintiff reported that she had no difficulty caring for her own personal needs and that she felt well. She denied bloody stools or symptoms of leukemia recurrence. It was concluded that the plaintiff demonstrated no evidence of leukemia recurrence (Tr. 291-94, 298-300, 303-08, 311-14, 318-19).

In a statement dated October 12, 2002, the plaintiff reported that she took Humalog (insulin hormone), Cozaar (for hypertension), Synthroid (a thyroid medication), and Provera (progestin hormone), and used an Estraderm patch (estrogen hormone) (Tr. 101).

Records of Kingstree Medical Center, Kingstree, South Carolina, between October 14, 2002, and July 17, 2003, revealed treatment with medication for IDDM, hypothyroidism, hypertension, and lice. Examinations revealed a soft, nontender abdomen, intact extremity motor functioning throughout, intact extremity sensory functioning throughout, the absence of extremity edema, and the absence of lymphadenopathy. Blood pressure readings ranged between 100/80 and 140/80. Blood glucose levels ranged between 104 mg/dL and 272 mg/dL. The plaintiff reported that she felt good. It was concluded that the plaintiff's hypertension was under good control (Tr. 205-20, 236-39, 277).

Ophthalmological examination on January 21, 2003, revealed best corrected visual acuity of 20/20-1 bilaterally, and the absence of diabetic retinopathy (Tr. 173).

6

Records of Carolina Health Care, Florence, South Carolina, between January 28 and May 15, 2003, revealed treatment with medication for IDDM. Examinations revealed normal thyroid examination normal reflexes. The plaintiff reported blood glucose levels typically in the 200 mg/dL range, and denied symptomatic low blood sugar episodes. Blood pressure readings ranged between 100/72 and 110/70 (Tr. 197-98).

The plaintiff was examined by Dr. Raymond K. Allen, a consultative physician, on March 27, 2003. She reported a recent diagnosis of cryptogenic hepatic cirrhosis in January 2003, causing side pain and fatigue, but the absence of treatment for this condition or jaundice resulting from it. She also reported a history of an episode of Bell's palsy a year previously, causing facial numbness; IDDM without prolonged episodes of hypoglycemia or hospitalization therefor; and hypertension and hyperthyroidism without symptoms. She additionally reported that she "[did] okay" treating pain with Advil and/or Tylenol. The plaintiff further stated she discontinued her last employment in December 2002, in order to relocate. Examination revealed best corrected visual acuity of 20/20 bilaterally; a blood pressure reading of 130/80; the absence of thyromegaly; full shoulder, elbow, wrist, knee, and ankle ranges of motion; and normal cranial nerve functioning, including the absence of facial asymmetry or weakness. Dr. Allen diagnosed IDDM under fair control, hypertension, and hypothyroidism, as well as histories of cryptogenic hepatic cirrhosis or unknown etiology, a right leg fracture, and a bone marrow transplant in the past secondary to leukemia which the plaintiff was tolerating well and did not mention that day (Tr. 176-78).

On April 2, 2003, a State agency physician concluded that the plaintiff retained the physical residual functional capacity (RFC) to lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk and sit six hours in an eight-hour workday; and push and/or pull within her lifting capacity; and that she had no postural, manipulative, visual, communicative, or environmental limitations (Tr. 182-85).

On May 6, 2003, Dr. Inderpal Singh, a nephrologist, stated the plaintiff had possible diabetic nephrology, but that no further assessment was required at that time, and that the plaintiff's hypertension was under good control (Tr. 193).

The plaintiff was examined by Dr. Walter James Evans, a neurologist, on May 8, 2003, with a complaint of bilateral hand numbness. The plaintiff denied neck pain, fevers, chills, or weight change. Examination revealed fluent speech; intact attention and concentration; intact cranial nerve functioning; normal extremity motor muscle strength, tone, and bulk throughout; a normal gait; normal extremity sensory functioning; and essentially normal reflexes. Dr. Evans diagnosed probable carpal tunnel syndrome (Tr. 195).

On August 19, 2003, a second State agency physician concluded that the plaintiff retained the physical RFC to lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk and sit six hours in an eight-hour workday; push and/or pull within her lifting capacity; climb ramps and stairs, balance, stoop, kneel, crouch, and crawl occasionally; and perform work not requiring any climbing of ladders, ropes, or scaffolds; and that she had no manipulative, visual, communicative, or environmental limitations (Tr. 336-37).

Dr. Evans examined the plaintiff again on October 18, 2004, with complaints of bilateral shoulder pain and tingling. The plaintiff reported that treatment with medication was somewhat effective. It was noted that a cervical spine MRI revealed multilevel disc degeneration and that nerve conduction studies revealed bilateral carpal tunnel syndrome and right peroneal neuropathy. Dr. Evans diagnosed cervical spinal stenosis with cervical spondylosis and multilevel disc degeneration, bilateral carpal tunnel syndrome, chronic pain syndrome, muscular headaches, and sleep apnea. He further stated that the plaintiff was unable to work in any capacity (Tr. 349-50).

In a statement dated December 6, 2004, Dr. Evans reported that the plaintiff had significant functional limitations and pain. He opined that the plaintiff could sit one to two hours in an eight hour day, could stand/walk one to two hours in an eight hour day, would have to get up and move around hourly, could occasionally lift up to 20 pounds and never lift more than 20 pounds, and was incapable of even low stress work. He further stated that the plaintiff's pain would periodically interfere with her attention and concentration. Dr. Evans stated that his opinion was supported by an MRI in October 2004 and nerve conduction studies in September 2004. He further stated that in his opinion the plaintiff was disabled from any work (Tr. 352-59).

In an undated statement, the plaintiff reported that she took Zetia (for hyperlipidemia), Glucophage (an oral antidiabetic medication), Lantus (insulin hormone), NovoLog (insulin hormone), Flexeril (muscle relaxant), Synthroid, Cozaar, and Vitamin E (Tr. 134).

At her hearing on November 18, 2004, the plaintiff testified that she had discontinued her last employment in order to relocate (Tr. 379-80, 382). She also testified that she experienced neck pain (Tr. 382-83, 387); back pain (Tr. 382-83, 387, 397); right leg pain and swelling; right ankle swelling, requiring elevation (Tr. 382-83, 387, 392-93); bilateral carpal tunnel syndrome causing hand numbness and tingling (Tr. 382-83, 394-95); a liver disorder (Tr. 385); bilateral foot numbness and tingling (Tr. 383, 395); and IDDM, to which she attributed fatigue and extremity numbness (Tr. 383-84). She further testified that she had hypertension for which she took medication (Tr. 385); a thyroid disorder for which she took medication (Tr. 385); and sleep apnea for which she used a continuous positive airway pressure device at night (Tr. 388-89). She additionally testified that medication for pain she took was somewhat effective (Tr. 385, 390, 397). She also testified that she had a history of an episode of Bell's palsy in the past causing facial numbness which had resolved (Tr. 386).

9

The plaintiff stated that she performed limited household cleaning and other chores (Tr. 389, 391-92), and possessed a valid driver's license and drove an automobile (Tr. 378). She also stated that her spouse was unable to work due to "back problems" (Tr. 379), but that he cooked and cleaned (Tr. 389).

A vocational expert, Arthur F. Schmitt, Ph.D., testified that, considering an individual of the plaintiff's age, education, past relevant work experience, and RFC to perform light work[2] reduced by limitations from any crawling, crouching, climbing, squatting, kneeling, operation of foot or leg controls with lower extremities, or reaching or working above shoulder level, and work not allowing a sit/stand option, jobs existed in the regional and national economies which such an individual could perform (Tr. 339). He cited parking lot attendant, storage facility clerk, and carton packer as examples, and provided the incidence of these jobs in the regional and national economies (Tr. 399-400).

## ANALYSIS

The plaintiff alleges disability as of December 18, 2002, due to thyroid and liver disorders, hypertension, diabetes, vision problems and "light stroke." The ALJ found that the plaintiff could perform light work reduced by limitations from work requiring crawling, crouching, climbing, squatting, kneeling, lower extremity pushing/pulling, or use of the upper extremities above shoulder level, and work not allowing a sit/stand option (Tr. 26). The ALJ found the plaintiff could perform a "significant range of light work." He further found that examples of jobs the plaintiff could perform included parking lot attendant, storage facility clerk, and carton packer (Tr. 26-27). The plaintiff alleges that the ALJ erred by (1) failing to properly evaluate the opinion of Dr. Evans, and (2) failing to properly assess the plaintiff's residual functional capacity.

---

[2]Light work involves sitting two hours and walking and standing six hours in an eight- hour day, and lifting no more than 20 pounds at a time. See 20 C.F.R.§§ 404.1567(b), 416.967(b) (2005); SSR 83-10.

10

***Treating Physician***

The plaintiff argues that the ALJ failed to properly evaluate the opinion of Dr. Evans, a neurologist, who opined in December 2004 that the plaintiff could sit one to two hours in an eight-hour day; could stand/walk one to two hours in an eight-hour day; would have to get up and move around hourly; could occasionally lift up to 20 pounds and never lift more than 20 pounds; and was incapable of even low stress work. He further stated that the plaintiff's pain would periodically interfere with her attention and concentration. Dr. Evans stated that his opinion was supported by an MRI in October 2004 and nerve conduction studies in September 2004. He further stated that in his opinion the plaintiff was disabled from any work (Tr. 352-59).

In the hearing decision, the ALJ stated, "As noted previously, Dr. Evans' opinion has been given minimal weight" (Tr. 24). Earlier in the decision, the ALJ noted that while Dr. Evans was a treating physician, his opinion of disability was one that is reserved for the Commissioner (Tr. 23). The ALJ further stated:

> Certain aspects of the doctor's opinion are in fact consistent with the residual functional capacity determined in this decision. For instance, Dr. Evans stated the claimant would need to get up and move around after sitting for a period of time. He also stated the claimant could occasionally lift up to twenty pounds.

(Tr. 23). The ALJ went on to state, "Taking Dr. Evans' statement that due to the claimant having periodic [pain] or other symptoms that would interfere with her attention and concentration, I have limited the claimant to unskilled work" (Tr. 23).

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §416.927(d)(2) (2004); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are

11

not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The regulations provide that even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying five factors: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. §404.1527(d)(2)-(5). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, *5. As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* 1996 WL 374188, *4.

The ALJ has given no reasons for giving Dr. Evans' opinion "minimal weight." As stated by the plaintiff, "The ALJ appears to fashion his rationale to suggest that Dr. Evans' assessment is consistent with the ALJ's determination for the most part, and to the

extent that it is not consistent, it is due to the ALJ's giving 'proper consideration' to the Plaintiff's impairments" (pl. brief 15). Accordingly, it is impossible for the court to determine whether the ALJ properly evaluated the opinion. Upon remand, the ALJ should evaluate the weight to be given to Dr. Evans' opinion in accordance with the above-cited rulings and regulations. In particular, the ALJ should address the test results that Dr. Evans cited as supporting his opinion.

### *Residual Functional Capacity*

The plaintiff next argues that the ALJ failed to evaluate her residual functional capacity ("RFC") as required by Social Security Ruling ("SSR") 96-8p. Specifically, the plaintiff contends that the ALJ failed to perform a function-by-function assessment, failed to quantify the "sit/stand option," and failed to consider all of her impairments in making the RFC assessment. SSR 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." This ruling further provides:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8P, 1996 WL 374184, *7.

The ALJ is also required to include in his/her RFC assessment, "a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

Significantly, the "RFC assessment must always consider and address medical source opinions," and in cases where the assessment conflicts with an opinion from a medical source, the ALJ "must explain why the opinion was not adopted." *Id.*

> SSR 96-8p provides in part:
>
> The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of "sedentary,"light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it. RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.

SSR 96-8P, 1996 WL 374184, *3.

> Also, 20 C.F.R. §404.1545(b) provides:
>
> Physical abilities. When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. §404.1545(b).

The plaintiff argues that the ALJ failed to perform a function-by-function assessment of her functional capacity, including her ability to stand or walk during a normal workday. As argued by the plaintiff, there is no way to determine what limitations the ALJ

intended to find with regards to the plaintiff's ability to stand and walk, and to assume that the ALJ intended to find the plaintiff able to perform the maximum measure of standing and walking that can be associated with light work activity would be unfair to her (pl. brief 19). The ALJ also failed to provide limitations regarding the plaintiff's ability to stoop and bend. Accordingly, upon remand, the ALJ should be instructed to provide a function-by-function assessment of the plaintiff's functional capacity. Further, the restriction to "sit-stand option" is too ambiguous to be meaningful given that the ALJ does not specify how frequently the plaintiff must change positions. Therefore, upon remand, the ALJ should be instructed to specifically describe the sit/stand option and the specific limits imposed by the restriction.

The ALJ found that the plaintiff's cervical pain due to degenerative joint disease, bilateral carpal tunnel syndrome, and cirrhosis of the liver were severe impairments (Tr. 22). He specifically found and provided an explanation as to why the plaintiff's Bell's Palsy, sleep apnea, and hypertension were not severe impairments (Tr. 21-22). However, the ALJ provided no explanation as to why the plaintiff's lumbar radiculopathy and peroneal neuropathy (Tr. 349), hepatitis (Tr. 18), hypothyroidism (Tr. 218, 292, 304, 318), and diabetes (Tr. 193-200, 220, 228, 230, 319) were not found to be severe impairments.

"'[A]n impairment can be considered as "not severe" only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984)). Accordingly, upon remand, the ALJ should be instructed to discuss why these impairments were determined to be non-severe. Further, the ALJ should explain why the plaintiff's bilateral carpal tunnel syndrome, which was found to be a severe impairment, would not lead to manipulative or dexterity limitations to the plaintiff's hands and fingers. The ALJ should further be instructed to consider the

combined effects of all the plaintiff's impairments and to include all of the plaintiff's impairments in his hypothetical question[3] to the vocational expert.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.


                                        s/William M. Catoe
                                        United States Magistrate Judge

May 31, 2006

Greenville, South Carolina

---

[3] The Fourth Circuit Court of Appeals has held that "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987).