IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Luz Morales, | ) | |
| | ) | C/A No.: 6:05-1574-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Jo Anne B. Barnhart, Commissioner of | ) | **O R D E R** |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Luz Morales filed an application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income benefits ("SSI") on January 17, 2003, alleging disability since December 18, 2002. Her application was denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 18, 2004. The ALJ issued a decision on February 17, 2005 that Plaintiff was not entitled to a period of disability, DIB, or SSI under Sections 216(i), 223, and 1614(a)(3)(A), respectively, of the Social Security Act. The decision of the ALJ became the "final decision" of the Commissioner when it was adopted by the Appeals Council on March 31, 2005. Plaintiff thereafter brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the "final decision" of the Commissioner.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge William M. Catoe for a Report and Recommendation. On May 31, 2006, the Magistrate Judge filed a Report of Magistrate Judge in which he recommended that the Commissioner's decision finding no disability be reversed under sentence four of 42 U.S.C. §§ 405(g), with a remand of the cause to the Commissioner for further proceedings. The Commissioner

filed objections to the Report of Magistrate Judge on June 8, 2006.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a *de novo* determination of any portions of the Report of Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b).

### I. FACTS

The facts are set forth in detail in the Report of Magistrate Judge. Report of Magistrate Judge, 1-10 (Entry 15). Briefly, Plaintiff applied for DIB and SSI in January 2003, alleging disability since December 2002 because of thyroid and liver disorders, hypertension, insulin-dependent diabetes mellitus ("diabetes"), vision problems, and "light stroke." Tr. pp. 76-79, 96, 363-65. She was 40 years old as of the date of the Commissioner's final decision. Id., p. 77. Plaintiff has the equivalent of a twelfth-grade education and in the past has worked as a hospital admissions clerk, a resort desk supervisor, a roadside service dispatcher, a technical support call center worker, a department store salesperson, a housekeeper, and a clerical worker. Id., pp. 97, 102, 110.

Plaintiff has an extensive medical history. In approximately 1990, Plaintiff underwent a bone marrow transplant due to leukemia. Id., p. 172. She also sustained a right leg fracture. Id., p. 176. Between October 10, 2002 and July 17, 2003, Plaintiff received treatment at the Medical University of South Carolina ("MUSC") for diabetes, as well as assessments for hepatic cirrhosis of the liver

and hypothyroidism. Id., pp. 291-94, 298-300, 303-08, 311-14, 318-19. A liver biopsy revealed that Plaintiff suffered from hepatic cirrhosis and chronic hepatitis. Plaintiff's medical records also indicate that she received treatment for diabetes, hypothyroidism, hypertension, and lice from October 2002 through May 2003. Id., pp. 176-78, 197-98, 205-20, 236-39, 277. In March 2003, Plaintiff also reported an episode of Bell's Palsy during the previous year. Id., p. 176.

On April 2, 2003, a State agency physician concluded that the plaintiff retained the physical residual functional capacity to lift twenty pounds occasionally and ten pounds frequently, stand and/or walk and sit for six hours in an eight-hour workday, and push and/or pull within her lifting capacity. Id., p. 182. He also noted that she had no postural, manipulative, visual, communicative, or environmental limitations. Id., pp. 182-85. Plaintiff was examined by a second State agency physician on August 19, 2003. Id., p. 336. He made the same findings as the previous State physician, but also concluded that Plaintiff retained the residual functional capacity to climb ramps and stairs, balance, stoop, kneel, crouch, crawl occasionally, and perform work not requiring any climbing of ladders, ropes, or scaffolds. Id., pp. 336-37.

On May 8, 2003, Plaintiff was examined by Dr. Walter James Evans, a neurologist at MUSC. Id., p. 195. She complained of bilateral hand numbness. Id. Dr. Evans diagnosed Plaintiff with carpal tunnel syndrome. Id. Plaintiff sought treatment again from Dr. Evans on October 18, 2004 for bilateral shoulder pain and tingling. Id., p. 349. Dr. Evans diagnosed Plaintiff with cervical spinal stenosis with cervical spondylosis and multilevel disc degeneration, bilateral carpal tunnel syndrome, chronic pain syndrome, muscular headaches, and sleep apnea. Id. He also found that Plaintiff was unable to work in any capacity. Id., p. 350. Dr. Evans stated that nerve conduction studies performed in September 2004 and an MRI conducted in October 2004 supported his opinion.

Id., p. 349. In a statement dated December 6, 2004, Dr. Evans reported that Plaintiff had significant functional limitations that would only allow Plaintiff to sit, stand, or walk for one to two hours in an eight-hour day, during which time she would need to get up and move around hourly. Id., p. 354. He determined that she could not safely lift over twenty and was incapable of even low stress work. Id., pp. 355-56. Dr. Evans also noted that Plaintiff's pain would periodically interfere with her attention and concentration. Id., p. 356. Again, Dr. Evans noted that Plaintiff was "disabled and unable to work." Id., p. 356.

The ALJ found that the medical evidence indicated Plaintiff has cervical degenerative joint disease, bilateral carpal tunnel syndrome, and cirrhosis of the liver, impairments considered to be "severe" based on the requirements of 20 C.F.R. § 404.1520(b), but that these medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. §§ 404.1520(c) and 416.920(b). Id., p. 26. The ALJ provided specific justifications as to why Plaintiff's Bell's Palsy, sleep apnea, and hypertension were not severe impairments. Id., pp. 21-22.

The ALJ recited Plaintiff's medical history and the various doctors who had treated her. Id., pp. 17-21. He noted that Dr. Evans' opinions were "given little weight," id., p. 24, and explained that while Dr. Evans was Plaintiff's treating physician, his general assessment of Plaintiff's disability was an opinion normally "reserved to the Commissioner." Id., pp. 23. The ALJ also discounted as not credible Plaintiff's allegations of disabling symptoms and limited functional capacity. Id., p. 17, 22, 26. He determined that Plaintiff retains the residual functional capacity to "perform light exertional work with restrictions. She is able to frequently lift ten pounds with a heaviest weight lifted of twenty pounds. She requires a sit/stand option. She is not to crawl, crouch, climb, squat, or kneel. She is not to use the lower extremities for pushing or pulling. She is not to use the upper

extremities for work above shoulder level.  The work is to be unskilled." Id., pp. 22-23.

The ALJ found that Plaintiff could not return to her past relevant work.  Id., p. 24.  Based on the testimony of a vocational expert offered at the hearing, the ALJ determined that a significant number of jobs existed in the regional and national economies that an individual of Plaintiff's age, education, past work experience, and the residual functional capacity to perform limited light work could perform.[1]  Id., p. 339.  Examples included employment as a parking lot attendant, storage facility clerk, and carton packer.  Id., pp. 399-400.  Therefore, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act.

## II.  STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964).  This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner.  Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971).

The court must uphold the Commissioner's decision as long as it is supported by substantial evidence.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).  "From this it does not follow,

---

[1]  The ALJ posed a hypothetical question to the vocational expert inquiring about whether jobs exist in South Carolina for "a person who is 40 years old, has a high school equivalency education . . . limited to light exertional level work . . . the jobs would be unskilled . . . there would be postural [lower and upper extremity] limitations . . . . And the job would offer the ability to alternate between sitting and standing . . . ." Tr. p. 399.

however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational." Vitek, 438 F.2d at 1157-58. The Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. Richardson v. Perales, 402 U.S. 389, 401 (1971).

### III.  DISCUSSION

**A.  Opinion of Treating Physician**

On appeal, Plaintiff asserted, among other things, that the ALJ erred by failing to properly assess the medical opinion of Dr. Evans, Plaintiff's treating physician. Plaintiff's Brief, 14-17 (Entry 10). Plaintiff contended that the ALJ should have given more weight to Dr. Evans' opinions in light of 20 C.F.R. § 404.1527(d), the regulation addressing how physicians' opinions are to be considered in the disability determination process. Id. The Magistrate Judge concurred in Plaintiff's arguments and recommended the within action be remanded to permit proper evaluation of the weight that should be given to Dr. Evans' opinions and address the test results Dr. Evans cited as supporting his opinion. Report, 11-13. The Commissioner contends that the Magistrate Judge erred in making his recommendation because the ALJ has the discretion to accord less weight to Dr. Evans' opinion because it was not supported by substantial evidence. Objections to Report of Magistrate Judge, 2-3 (Entry 16). The court disagrees.

All medical opinions are considered during the disability determination process. See 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive."). A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001). When an ALJ decides not to give a treating source's opinion controlling weight, the ALJ must apply the factors as set forth in the regulation to determine the appropriate weight to be given to the opinion, including the length of the treatment, frequency of examination, nature and extent of the treatment relationship, consistency of the opinion with the record as a whole, and specialization of the treating physician. 20 C.F.R. § 404.1527(d)(2).

Additionally, the ALJ must "give good reasons" in the decision for the weight given to the treating physician's opinion. Id. See also Social Security Ruling 96-2p ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). Even in cases where a treating source's opinion is justifiably not given controlling weight, the opinion is "still entitled to deference . . . . In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Id.

In the instant case, the ALJ identified Dr. Evans as the treating physician, but he did not provide any explanation for his decision to give Dr. Evans' opinion only "minimal weight." Tr. pp. 23, 24. While the ALJ properly disregarded Dr. Evans' characterizations of Plaintiff as "disabled"

7

or "unable to work" as administrative findings reserved for the Commissioner's determination, id., p. 23, the ALJ offered no rationale for his rejecting the rest of Dr. Evans' opinion. The Commissioner contends that Dr. Evans' opinion was given little weight because it was not supported by substantial evidence, Objections, 2; however, that argument is contradicted by the record. Not only did Dr. Evans state that his opinions were based on nerve conduction studies performed in September 2004 and an MRI conducted in October 2004, id., p. 349, but the ALJ relied on at least one of Dr. Evans' statements in making his own findings. See Tr. p. 23 ("Taking Dr. Evans' statement that due to the claimant having periodic pan [sic] or other symptoms that would interfere with her attention and concentration, I have limited the claimant to unskilled work."). More importantly, the ALJ never articulated medical insufficiency as a reason for not giving Dr. Evan's assessment controlling weight. It is impossible for the court to determine whether the ALJ properly evaluated the opinion precisely because he provided no explanation, as the Magistrate Judge properly found. Report, 13. The Commissioner's objection lacks merit.

**B. Plaintiff's Residual Functional Capacity**[2]

Plaintiff also contended that the ALJ erred by not evaluating her residual functional capacity pursuant to Social Security Ruling 96-8p. Plaintiff's Brief, 18. Specifically, Plaintiff argued that the ALJ failed to perform a function-by-function assessment, quantify the sit/stand option, and include all of her impairments in making the residual functional capacity assessment. Id. at 18-25. The Magistrate Judge agreed with Plaintiff's arguments and recommended the within action be

---

[2]   Social Security Ruling 96-8p provides that a residual functional capacity is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."

8

remanded with instructions for the ALJ to provide a function-by-function assessment of Plaintiff's functional capacity, a specific description of the "sit/stand" option and its limitations, and a full explanation for why some of Plaintiff's conditions were determined to be non-severe. Report, 15-16. The Commissioner contends that the Magistrate Judge erred in making these recommendations because Social Security Ruling 96-8p only requires a "function-by-function expression" of Plaintiff's functional capacity and the ALJ decision included a comprehensive discussion of the medical evidence. Objections, 3, 6. Again, the court disagrees.

It is well-settled that the initial residuary functional capacity determination requires a function-by-function analysis. See Social Security Ruling 96-8p (providing that residual functional capacity "must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium' 'heavy,' and 'very heavy' work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it . . . . [W]ithout the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work . . . ."); Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001) (finding that in a function-by-function assessment, strength demands such as sitting, standing, walking, lifting, carrying, pushing, and pulling "each . . . must be considered separately"). Ruling 96-8p requires that adjudicators "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."

Plaintiff argued that the ALJ failed to conduct a function-by-function assessment of her functional capacity as demonstrated by the lack of any finding as to the length of time Plaintiff can stand or walk during a normal workday. Plaintiff's Brief, 19. The ALJ stated that Plaintiff's residual functional capacity will allow her to "perform light exertional work with restrictions" and "frequently lift ten pounds with a heaviest weight lifted of twenty pounds." Tr. p. 22. There is no explanation for the restrictions or a clear description of how often Plaintiff is able to lift any amount of weight. Likewise, although the ALJ noted that Plaintiff "requires a sit/stand option," id., there is no further explanation of the "sit/stand" option or the limits imposed by it. This overall lack of specificity in a residuary functional capacity assessment does not comport with Ruling 96-8p's mandates. As the Magistrate Judge found, "there is no way to determine what limitations the ALJ intended to find with regards to the plaintiff's ability to stand and walk, and to assume that the ALJ intended to find the plaintiff able to perform the maximum measure of standing and walking that can be associated with light work activity would be unfair to her." Report, 15. While the ALJ did give a detailed account of Plaintiff's medical history, Tr. pp. 17-21, he failed to include a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)," as required by Ruling 26-8p.

Plaintiff also argued on appeal that the ALJ failed to consider all of Plaintiff's impairments when making the residual functional capacity assessment. Plaintiff's Brief, 22. Plaintiff challenged the ALJ's failure to address the severity of some of Plaintiff's medical conditions. Id. The ALJ specifically found that Plaintiff's cervical degenerative joint disease, bilateral carpal tunnel syndrome, and cirrhosis of the liver were "severe" impairments within the meaning of 20 C.F.R. §

404.1520(b). Id., p. 26. He also ruled that Plaintiff's Bell's Palsy, sleep apnea, and hypertension were not severe impairments. Id., pp. 21-22. However, the ALJ provided no explanation as to why Plaintiff's lumbar radiculopathy and peroneal neuropathy, id., p. 349; hypothyroidism, id., pp. 218, 292, 304, 318); hepatitis, id., p. 18; and diabetes, id., pp. 193-200, 220, 228, 230, 319, were not found to be severe impairments. The Magistrate Judge recommended that, on remand, the ALJ should be instructed to discuss why the impairments were determined to be non-severe, explain why Plaintiff's bilateral carpal tunnel syndrome would not lead to manipulative or dexterity limitations to Plaintiff's hands and fingers, consider the combined effects of all of Plaintiff's impairments, and include all of Plaintiff's impairments in any hypothetical question to the vocational expert. Report, 15-16.

The court agrees with the Magistrate Judge's finding. "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Fully considering the severity of each medical impairment is critical to the disability determination process. In determining whether an impairment is severe, the adjudicator must consider the combined effect of all impairments. See 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be

considered throughout the disability determination process."). As Plaintiff argues, when an ALJ fails to consider one of Plaintiff's impairments, he has failed to consider the combined effect of her impairments. Plaintiff's Brief, 25. It was necessary for the ALJ to address the potential severity of each of Plaintiff's illnesses as a part of his overall analysis. On remand, the ALJ is instructed to fully consider all of Plaintiff's medical conditions in determining her disability eligibility. The court has thoroughly reviewed the Magistrate Judge's findings and recommendations and finds them all to be appropriate.

## IV. CONCLUSION

The court adopts and incorporates herein by reference the Report of Magistrate Judge. Accordingly,

It is ORDERED that the Commissioner's decision finding no disability be **reversed** and that the matter be remanded to the Commissioner under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), with a remand of the cause to the Commissioner for further proceedings consistent with this order.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Margaret B. Seymour
United States District Judge

September 29, 2006

Columbia, South Carolina